IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL DEVELOPMENT CORPORATION, | § § § § § | |
| Plaintiff, | | |
| v. | § § § § § § § § | Case No. 4:08-CV-111 |
| SIMON NICHOLAS RICHMOND and ADVENTIVE IDEAS, LLC, | | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS RICHMOND'S AND ADVENTIVE'S MOTION FOR AN AWARD OF COSTS AND ATTORNEYS' FEES**

The following are pending before the court:

1. Defendants Richmond's and Adventive's motion for an award of costs and attorneys' fees (docket entry #53);

2. Plaintiff's response to Defendants Richmond's and Adventive's motion for costs and attorneys' fees (docket entry #56);

3. Defendants Richmond's and Adventive's notice of related proceedings (docket entry #57); and

4. Plaintiff's response to Defendants Richmond's and Adventive's notice of related proceedings (docket entry #58).

Having considered the Defendants' motion and the responsive briefing thereto, the court finds that the motion should be denied.

### BACKGROUND

The Plaintiff sold solar powered LED outdoor lamps (item number M15483) to QVC, Inc. ("QVC"). QVC, in turn, sold the lamps to its customers via its home shopping network. Defendant

-1-

Adventive Ideas, LLC ("Adventive") markets garments and house and garden products. Among its products, Adventive markets a solar powered, color changing LED light and an illuminated wind indicator, both of which were invented by the president of Adventive, Defendant Richmond ("Richmond"). The Defendants assert that the solar powered, color changing LED light is covered by United States Patent Number 7,196,477 ("the '477 patent") and the wind indicator is covered by United States Patent Number 7,336,157 ("the '157 patent"). Richmond licensed the '477 and '157 patents to Adventive. The '157 patent was not at issue in this lawsuit.

On February 28, 2008, Richmond, on behalf of Adventive, initiated correspondence with QVC about applying to become a vendor. On March 20, 2008, Richmond received a telephone call from Jackie Lesser ("Lesser"), counsel for QVC. During the telephone conversation, Lesser inquired about Adventive's '477 and '157 patents. More specifically, Lesser questioned whether any of QVC's other vendors sold products similar to those covered by the '477 and '157 patents. After conducting a search of the word "solar" on QVC's website, Richmond learned that QVC offered for sale a solar powered, color changing LED light (model number M15483) and an illuminated wind indicator (model numbers M14839 and M14787).

Thereafter, on March 20, 2008, Richmond sent an email to Lesser which provided, in pertinent part, as follows:

- The QVC items I noticed of initial concern for patent 7336157 (  ) are: M14839 and M14787.

- The QVC item I noticed of initial concern for patent 7196477 (  ) is M15483.

On March 24, 2008, Lesser, on behalf of QVC, sent a letter to the Plaintiff stating, in pertinent part, as follows:

> This letter is to advise you that QVC, Inc. ("QVC") has been contacted by Simon Richmond of Adventive IDEAS LLC alleging that the above-referenced product (item number M15483 – Westinghouse set of eight copper finish color changing solar) sold by QVC infringes Patent No. 7196477 owned by Adventive IDEAS LLC.
>
> _____
>
> You should also be aware that sales of this product may be suspended pending resolution of this issue to QVC's satisfaction.

On March 31, 2008, the Plaintiff filed the instant lawsuit asserting the following causes of action:

1. Declaratory judgment of non-infringement;

2. Declaratory judgment of invalidity;

3. Business disparagement;

4. Defamation;

5. Tortious interference with an existing contract and prospective business relations; and

6. Unfair competition.

The Plaintiff's lawsuit was based on the premise that Richmond "contacted QVC and stated that he was the owner of the '477 patent, and further stated that [the Plaintiff's] Solar Powered LED Outdoor Lamp infringed upon claims of the '477 patent." PL. ORIG. COMPL. AND JURY DEMAND, p. 3, ¶ 10.

On May 28, 2008, the Defendants moved to dismiss the Plaintiff's complaint for lack of subject matter jurisdiction, lack of personal jurisdiction and improper venue. On June 12, 2008, the Plaintiff filed its response to the Defendants' motion to dismiss. After additional briefing occurred, on November 25, 2008, the Plaintiff filed an unopposed motion for extension of time to conduct

subject matter and personal jurisdiction discovery in order to supplement its response to the Defendants' motion to dismiss. On December 5, 2008, the court granted the Plaintiff's motion, permitting jurisdictional discovery until January 15, 2009. The Plaintiff was also ordered to supplement its response to the Defendants' motion to dismiss by January 15, 2009. Thereafter, the Plaintiff timely filed its supplemental response to the Defendants' motion to dismiss.

On March 3, 2009, the Defendants filed a motion to modify the scheduling order (docket entry #48), requesting a six month extension of all deadlines due to their pending motion to dismiss for lack of subject matter and/or personal jurisdiction. On March 19, 2009, the Plaintiff filed its response in opposition to the Defendants' motion to modify the scheduling order. Interestingly, four days later on March 23, 2009, the Plaintiff filed a notice of dismissal without prejudice. In light of the Plaintiff's notice, the court signed an order of dismissal without prejudice on March 30, 2009. In its order of dismissal, the court stated as follows:

> The Defendants have indicated to the court that they will be seeking to recover their costs of court and attorneys' fees. If the Defendants choose to so move, they shall do so within thirty (30) days from the date this order is entered.

The Defendants timely filed their motion for attorneys' fees on April 30, 2009. Thereafter, on May 26, 2009, the Plaintiff filed a complaint against the Defendants in the United States District Court for the District of New Jersey, 3:09-cv-2495. The New Jersey lawsuit was premised on the same facts and causes of action alleged in the instant action. The Defendants again moved to dismiss for lack of subject matter jurisdiction. On November 13, 2009, the New Jersey court denied the Defendants' motion to dismiss, finding sufficient evidence to establish subject matter jurisdiction under the Declaratory Judgment Act, federal question jurisdiction over the Plaintiff's claim of unfair competition, and supplemental jurisdiction over the remaining state law claims.

DISCUSSION AND ANALYSIS

In their motion for attorneys' fees, the Defendants argue that they are entitled to an award of attorneys' fees pursuant to FED. R. CIV. P. 11(c), 28 U.S.C. § 1927 and the court's inherent power to assess attorneys' fees. The Defendants contend that they should be awarded their attorneys' fees because (1) the court lacked subject matter jurisdiction over the Plaintiff's declaratory judgment claims since a justiciable case or controversy did not exist, (2) the court lacked personal jurisdiction over the Defendants, and (3) the Plaintiff's remaining claims were legally baseless. The court will discuss each in turn.

### A. Subject Matter Jurisdiction

The Plaintiff's claims for declaratory judgment, as well as the Plaintiff's remaining claims, hinge on the Defendants' email noting an "initial concern" about certain products. The New Jersey court concluded, however, that the email provided sufficient facts to establish subject matter jurisdiction under the Declaratory Judgment Act, federal question jurisdiction with respect to the unfair competition claim, and supplemental jurisdiction over the remaining claims. An award of attorneys' fees for lack of subject matter jurisdiction would undermine the findings and conclusions of the New Jersey court. This court declines to disturb the findings of the New Jersey court. Accordingly, on this basis, the Defendants' motion for an award of attorneys' fees is denied.

### B. Personal Jurisdiction

The Defendants also seek an award of attorneys' fees because they contend that at the time the Plaintiff filed its complaint, the Plaintiff knew or could have discovered prior to filing the complaint that the Defendants did not have sufficient contacts with the State of Texas. In response, the Plaintiff argues that at the time it filed the lawsuit, it was of the belief that the Defendants were

subject to the personal jurisdiction of this court. The Plaintiff further notes that the Defendants did not oppose its motion to conduct jurisdictional discovery. The court, however, was not required to determine whether the Defendants were subject to the jurisdiction of this court because the Plaintiff filed a notice of voluntary dismissal. The court declines to make such a determination at this juncture.

However, the court is perplexed as to why the Plaintiff continued to advocate that this court was vested with personal jurisdiction over the Defendants after the jurisdictional discovery period closed. In its supplemental brief in opposition to the Defendants' motion to dismiss (docket entry #45), the Plaintiff still argued that the Defendants' contacts with the State of Texas were sufficient for the court to exercise personal jurisdiction over the Defendants. Further, a mere four days before moving for dismissal, the Plaintiff opposed the Defendants' motion to modify the scheduling order. The Plaintiff then filed its notice of voluntary dismissal, subsequently re-filing the lawsuit in the New Jersey court where personal jurisdiction existed without doubt. The court questions whether the Plaintiff continued to believe that this court was vested with jurisdiction at the time it filed its supplemental brief in opposition to the Defendants' motion to dismiss. The court further questions the Plaintiff's reasoning for opposing the Defendants' motion to modify the scheduling order when it was contemplating the dismissal of this lawsuit. The court reviews these issues pursuant to FED. R. CIV. P. 11(c), 28 U.S.C. § 1927 and the court's inherent power to assess attorneys' fees.

### 1. FED. R. CIV. P. 11(c)

Rule 11(c)(1) of the Federal Rules of Civil Procedure provides that a court may impose sanctions against an attorney, law firm or party for violations of FED. R. CIV. P. 11(b). Rule 11(c)(2) provides that such a motion for sanctions (1) must be made separately from any other

motion, (2) must describe the specific conduct that allegedly violated FED. R. CIV. P. 11(b), and (3) must be served pursuant to FED. R. CIV. P. 5. However, the motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." FED. R. CIV. P. 11(c)(2).

The Defendants did not file their FED. R. CIV. P. 11(b) motion separately from any other motion. Further, the Defendants did not provide the Plaintiff with the opportunity to withdraw any allegedly offending pleadings prior to filing their Rule 11 motion for sanctions. Since the Defendants did not comply with the requisite procedures outlined in FED. R. CIV. P. 11(c)(2), the court finds that the imposition of sanctions pursuant to Rule 11 is not appropriate.[1]

### 2. 28 U.S.C. § 1927

Title 28 U.S.C. § 1927 provides –

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Pursuant to the language of § 1927, the court may shift fees to any attorney but may not shift fees to a party. *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002). The court "must find that the sanctioned attorney multiplied the proceedings both 'unreasonably' and

---

[1] The court notes that FED. R. CIV. P. 11(c)(3) allows the court to impose sanctions against an attorney, law firm or party on its own accord. However, the court may issue sanctions on its own initiative only after the court issues an order to the attorney, law firm or party to show cause. The show cause order must specifically describe the conduct that is alleged to have violated FED. R. CIV. P. 11(b). Here, the court did not issue a show cause order; accordingly, the court shall not issue sanctions on its own initiative.

'vexatiously.'" *Id*. (citation omitted). "This requires 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'" *Id*. (citation omitted). "Section 1927 only authorizes shifting fees that are associated with 'the persistent prosecution of a meritless claim.'" *Id*. (citation omitted). "The courts often use repeated filings despite warnings from the court, or other proof of excessive litigiousness, to support imposing sanctions." *Id*. 525-526 (citation omitted).

Here, while the court finds the two pleadings referenced above to be suspect in light of the Plaintiff's notice of voluntary dismissal, the court declines to find, and the Defendants have not offered evidence, that counsel for the Plaintiff acted in bad faith, with improper motive or reckless disregard of the duty owed to the court. Accordingly, the court finds that the imposition of sanctions pursuant to 28 U.S.C. § 1927 is not appropriate.

### 3. Inherent Power

"Federal courts have inherent powers necessary to achieve the orderly and expeditious disposition of their dockets." *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996) (citation omitted). "'When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions.'" *Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 952 (5th Cir. 2001) (citation omitted). "'Because of the potency of inherent powers and the limited control of their exercise, however, they must be used with great restraint and caution. The threshold for the use of the inherent power [to impose] sanction[s] is high.'" *Id*. (citation omitted). "The court must make a specific finding of bad faith." *Id*. (citation omitted).

As noted previously, the Defendants have not offered evidence, and the court declines to find,

that the Plaintiff acted in bad faith. Accordingly, the court finds that the imposition of sanctions pursuant to its inherent powers is not appropriate.

## Conclusion

Based on the foregoing, the court hereby **DENIES** Defendants Richmond's and Adventive's motion for an award of costs and attorneys' fees (docket entry #53).

IT IS SO ORDERED.

**SIGNED this the 31st day of March, 2010.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE